MARGARET JACKLING, Administratrix, &c. of SAMUEL BROWN, deceased, v. THOMAS EDMONDS.

The petition for a discovery should set forth specifically the papers and documents required.

The rule, requiring the petition to be verified by affidavit, stating that the books and papers, whereof discovery is sought, are not in the possession nor under the control of the party applying therefor, and that he is advised by his counsel, and verily believes, that such discovery is necessary to enable him to plead or prepare for the trial, must be observed.

Applications of this nature will be scrutinized by the court, and will be denied when indefinite and made under circumstances of suspicion.

And the court will act with great caution when the suit is brought by administrators and a discovery of papers of their intestate is sought.

Accordingly, a discovery was refused to the defendant, when applied for two years after the complaint was served, the original plaintiff having in the mean time died and been succeeded in the prosecution of the action by his personal representative, and where the application called for numerous papers relating to transactions with the decedent, some of which were not specifically described, and others alleged to be memoranda made by the defendant himself, who at one period had admitted indebtedness and had stated, without requiring the papers in question, that he had completed, within a few items, an account which he was preparing to exhibit the true balance alleged by him to be due.

APPLICATION by the defendant to compel the discovery of papers in the hands of an administratrix, prosecuting an action which had been instituted by an intestate, in his life time.

The petition stated, that the suit was for $17,000, alleged to be due for moneys loaned, and also upon upwards of twenty promissory notes, running through a period of nine years. That the notes were memorandum notes, given in exchange for like notes of the plaintiff, which had been taken up and paid by the defendant. That the cause was referred for trial, and that testimony having been taken by the plaintiff, the defendant was now giving proofs. That the defendant's notes were suffered to remain in the decedent's hands under assurances that they should not be used, the decedent having made a will appointing the defendant his executor, but that the will was destroyed after his death. That from time to time written statements

were made up of the money transactions between them, and memoranda made of settlements, which, with the notes and other papers relating thereto, were all kept together by the decedent, and were by him handed to one Thompson, who delivered them to the plaintiff's attorneys, and that they were always kept together as relating to the same matter, except when separated upon the appraisement of the decedent's property and on the trial of this cause. That as the petitioner believes, an inspection and examination of " the statements, notes, checks, papers, letters, and memoranda," left by the decedent, will establish the existence of little or no indebtedness. That it is essential to the defence that the petitioner be allowed an inspection or copy " of any and all papers " relating to the transactions between the original parties to the suit. That they contain evidence relating to the merits of the defence, as he is advised by his counsel, stating name and residence, and verily believes, to whom he has stated the facts and circumstances of his case, and the particulars of the papers, so far as recollected. That on the 1st and 11th of February (the petition was dated March 18), notices were served upon the plaintiff's attorneys to produce on the trial, or allow copies to be taken of " all the said papers, memoranda, notes, checks, accounts, and due bills, containing entries or memoranda, or mention of any money matters between the defendant and the deceased." That the plaintiff's attorneys declined to allow such inspection, unless the defendant would introduce in evidence the whole together, or such facts only as the plaintiff should designate. That on the trial, only twenty-seven of the notes and claims sued upon were introduced, and the handwriting was proved by said Thompson, who testified, upon cross examination, that the decedent had given him " a parcel of various papers in one lot, containing, among others, papers, letters, notes, and checks, and statements of figures in writing, and memoranda in the handwriting of the defendant and the deceased," and that all the notes produced in proof by the plaintiff's attorneys were among them, and some of the notes of the deceased had been paid through the bank, and were so marked. That the decedent had

also given him a certain bond and mortgage, assigned to the deceased, upon a consideration paid by the defendant, and held for his benefit and subject to his (the defendant's) order. That the notice was produced at the trial, when the plaintiff took time to consider. That on the 8th of March, a third and more specific notice was served, requiring the production of "all notes and checks corresponding in date or amount with those in suit, whether made by or bearing the name of either the defendant or the deceased, with the mortgage and assignment, and all statements in writing made by the defendant or the deceased touching any of the aforesaid papers," and all papers delivered to the plaintiff's attorneys in the lifetime of the decedent. That at a further hearing, March 14, the defendant called for the duplicate notes required in the last notice, but the plaintiff refused them unless the defendant would introduce in evidence all the papers together, excluding the letters and statements of account in the handwriting of the defendant. That as the defendant believed, in the inventory of the decedent's property, filed in the surrogate's office under the said Thompson's inspection, several of the notes sued upon were not mentioned at all, and all enumerated were placed under the head of "doubtful," and on the making up of the inventory, "the statements and notes, checks and memoranda aforesaid, showing payment of the notes inventoried," were suppressed from the appraisers through Thompson's agency; that a doubt as to the validity of this claim was conceded. That the defendant always, until March 14, believed that the papers would be produced. The petition concluded with a prayer for an inspection and copy, or permission to take a copy, "of all the aforesaid notes, memoranda, checks, statements in writing, and all papers touching or relating to any money transactions" between the defendant and the decedent, "now in the possession of the administratrix or the plaintiff's attorneys, or under the control of either of them, or left together by the decedent in his lifetime, and delivered or sent by him to the plaintiff's attorneys, as testified to by the witness Thompson." Here followed a verification, simply to the effect, that the petition was

true of the defendant's knowledge, except as to statements upon information and belief, and as to these, that the defendant believed them to be true.

The petition was opposed, and many of its material averments controverted, by an affidavit of one of the plaintiff's attorneys, which stated, in substance, that the said Thompson was a fast friend of the decedent and of his family; that the inventory alluded to was made in the deponent's presence; that if any discrepancy existed, it was his mistake; that Thompson had nothing to do with the notes; that they were designated as doubtful only in view of the defendant's character and supposed means; that circumstances, which were detailed, showed an undoubted revocation of the will referred to; that the suit was commenced more than two years before the date of the petition; that when the deponent was retained, the decedent handed to him a large number of papers, consisting of the notes in the complaint mentioned, some notes made by him to the order of the defendant, and a large number of checks, some drawn to order and some to bearer, which checks, the decedent stated, represented loans by him to the defendant; that he had never borrowed from the defendant, but had continually loaned to him, and had been deluded and defrauded out of large sums of money by the unscrupulous plausibility of the defendant, who had promised a settlement, but had procrastinated under the pretence that his indebtedness was less than the fact; that the decedent had stated that the defendant had written many letters and statements which were false; that none of the letters in question, as the deponent believes, were in answer to letters of the decedent; that there were papers, among the rest, in the handwriting of the defendant, without heading or conclusion; that the decedent had said that his notes to the defendant's order were made at the request of the defendant to enable him to raise money upon them, and that he (the decedent) had furnished the defendant the means of taking them up, often with uncurrent funds, which the defendant discounted, so as to take up the notes with his own checks, and at other times in part with uncurrent funds and in part with the checks of the de-

cedent. The affidavit then explained the matter of the alleged mortgage at length, and stated that he (the deponent) was satisfied that even if it formed an existing lien, it was worthless, by reason of prior incumbrances upon the property nominally covered by it. And the affidavit continued, alleging that after the death of the original plaintiff, eighteen months before the date of the petition, the defendant's attorney stated to the deponent, that the plaintiff's claim in suit was greater than the real debt; that if he (the defendant) had time, he could and would show this; that nothing could be obtained from him by coercion, but that he would pay the amount owing by installments; that the defendant's attorney agreed to furnish a verified account, but failed to do so, and about nine months after the original plaintiff's death, and about a year before the date of the petition, the suit was revived by the administratrix; that requests for time to make such statements were then renewed and granted in order to spare the expense of a trial before three referees, to whom the case had been referred before the original plaintiff's death; that the statement not being made, the plaintiff noticêd the reference in November preceding the March when the petition was presented; that some ten months before the notice of reference was served, the defendant's attorney wrote a letter to the deponent, in which he stated that his client would " make a minute statement under oath respecting every cent he owes, and will arrange to pay it as fast as possible," but that delays were granted to no purpose, although the defendant's attorney, about four months after sending the above letter, wrote, " There are some thirty odd items, and he has got up to about number twenty-six or twenty-seven." The affidavit denied that the deponent had taken time to consider as to complying with either of the defendant's notices, and stated that they had been objected to by him as too general; that he had offered to the referees to produce and allow the defendant to give in evidence all the notes, checks, and memoranda left with him by the decedent, or received by him, except the letters of the defendant, or his written statements. And that all the papers referred to were,

and had uninterruptedly continued, in the deponent's possession as counsel of the decedent and of the administratrix.

On the argument of the application, in the first instance, the plaintiff's counsel insisted that the defendant, " by his delay and (alleged) bad faith in the matter, had precluded himself from the right to a discovery ;" that if made, it should, under the circumstances, be in such form as to compel the defendant to put in the whole of the papers left with the plaintiff's counsel at the time the decedent placed the case in his charge, with his explanation and statement of account accompanying, and omitting the letters of the defendant and every paper in his handwriting which did not also contain some memorandum of the decedent.

The petition was argued, at a special term, before WOODRUFF, J., who filed with the papers the following opinion :

" Under the peculiar circumstances of this case, I think it is too late for the defendant to claim the discovery which he seeks. More than two years have elapsed not only since the suit was commenced, but since the complaint appears to have been served upon the defendant's attorney, apprising him distinctly of the particulars of the plaintiff's claim, and therefore of the proofs which he must be prepared to make in his defence.

" In the meantime the original plaintiff has died, the papers sought for so far as particulars thereof are disclosed by the petition—which is in this respect not so specific as is proper in describing the papers and showing that they are necessary— are for the most part of a very equivocal character, and mainly alleged to be made by the defendant himself. The original plaintiff being dead, his representatives may be placed at great disadvantage for the want of that knowledge and information which the deceased could give in relation thereto.

" It is very doubtful, whether upon the facts stated in the petition, the papers sought could be used in evidence if produced. But if there are any which could be received, the defendant has not, I think so designated them as to show that they are necessary to his defence.

Jackling *v*. Edmonds.

" Had the petition shown an actual settlement, and that such settlement was reduced to writing in a form that would constitute legal evidence thereof, and that such writing was in the plaintiff's possession, I should be disposed notwithstanding the delay to make the order ; but this I think he has not done.

" There seems to me great danger of injustice to the plaintiffs in making the order, under the present circumstances, especially after the repeated admission of the defendant or his attorney that he can make up a true statement of the account without the aid of the memoranda sought, and when it is admitted that the alleged statements are in the defendant's own handwriting, and no reason is given why he cannot make the same statements again; if he wishes to do so.

" The petition should, I think, be denied, costs $10, to abide the event of suit, without prejudice to renewal upon further facts, if defendant be so advised."

An order, in pursuance of the above decision, having been entered, the defendant appealed therefrom to the general term.

*Albert Mathews*, for the motion, cited 2 R. S. 3d ed. p. 262 (marg. p. 199), §§ 30, etc. [§§ 21, etc.] ; *ib.* p. 263 (marg. p. 200), § 36 [§ 27 ] ; *Hoyt* v. *The American Exchange Bank*, 1 Duer, 652 ; *Kenny* v. *Clarkson*, 1 Johns. 385 ; *Townsend* v. *Lawrence*, 9 Wend. 458.

*Andrew Boardman*, opposed, cited, *Bowne* v. *Cribb*, 20 Wend. 682 ; *Ryves* v. *Ryves*, 3 Vesey, Jr. 346–7 ; *Stanton* v. *Del. Mutual Insurance Co.*, 2 Sand. S. C. R. 662 ; *Richards* v. *Frankum*, 9 Carr. and P. 221.

By the Court. Daly, J.—I think the judge below did right in denying this application.

The granting of a discovery of this kind rests in the sound discretion of the court. (*Bowne* v. *Cribb*, 20 Wend. 682.) And where no particular paper or document is specified, but the application is in effect for liberty to inspect and make copies of all papers relating to transactions between the defendant

and a deceased party for the benefit of whose estate the action is prosecuted, it behooves the court to act with great caution, to be fully satisfied that the production of the papers or documents sought is essential to enable the defendant to make out his defence, and that his application is free from all suspicion.

The papers sought according to the defendant's showing are numerous, consisting of alleged memoranda, notes, and checks, statements in writing of money transactions between him and the deceased, memoranda made of settlement, memoranda in the defendant's handwriting; letters and other papers, and memoranda left by the deceased, involving or relating to a claim made against him by the administratrix, of a considerable amount, upon which he admits that something is due. No one paper is particularly specified except a mortgage alleged to have been assigned to the deceased and held by him for the defendant's benefit and subject to his order, the consideration for it having been paid by the defendant; but no description of it is given, nor does the petition state by whom it was made, nor to what it relates, whether it was a mortgage of real or personal estate, for what amount, its date, or anything by which it could be identified, nor is it included at the close of the petition, among the different kinds of documents of which discovery is sought, other than under the general head of 'other papers,' while the plaintiff's attorney swears that a mortgage assigned by the defendant to the deceased was left with him, the attorney, and which the deceased told him had been assigned to him as security for a note of deceased for $1,000 loaned by him to the defendant, which note the deceased left with his attorney. The petitioner alleges that all the notes in suit were given by him as memorandum notes, in exchange for notes of the deceased, which he alleges, he took up and paid when they fell due, and returned to the deceased without receiving back the notes in suit. This may undoubtedly be true, but it is a statement that must be received with caution, when Brown is no longer alive, and we cannot say what answer he might be able to make to it. His declarations during life to his attorney are not consistent with its

probability, but on the contrary go to show that it is untrue.

But the circumstance casting doubt and suspicion as to the *bona fides* of this application is, that after Brown's death, and after the commencement of a suit by him during his life, to recover the amount of these notes; the defendant asked for time to make a statement of the amount of his indebtedness, which was granted to him and which he failed to do after a delay of many months, during which time he did not profess that the examination of any of the papers left by the deceased was essential to the making out of such statement, but on the contrary, declared, when he first asked for time for that purpose, that he could show what the real state of the indebtedness was, nor was any movement made by him for a discovery or examination of any papers left by the deceased, until after the suit was revived in the name of the present plaintiff.

The offer made to him by the plaintiff's attorney, was a reasonable one, and all that could have been expected under the circumstances; and to suffer him now to rummage over all the papers left by the deceased, relating to their mutual transactions, and make use, upon the trial, of whatever he can find, when Brown is no longer living, and the administratrix is deprived of any explanation or suggestion that might come from him, would, I think, be very improper.

It appears from the admission of the defendant's attorney that he had nearly completed his statement without the aid of any of these papers; that in a statement intended to embrace thirty items, he had completed it as far as the twenty-sixth item. It is to be presumed, therefore, that if there is any paper in the plaintiff's possession, the production of which is essential to his defence, he can describe it with sufficient certainty to enable the court to determine whether its production is material or not. If he does so, even at this late period, he may have whatever relief the purposes of justice require; but a loose, indefinite, and suspicious application of this kind is not to be encouraged.

The application, moreover, was not made in conformity with

the ninth rule of the Supreme Court.   The affidavit annexed to the petition does not state that the papers are not in the defendant's possession or control, and are necessary to enable him to prepare for trial.   For this reason alone the application was properly denied, but the most weighty objection is the one above referred to, that it does not specify the particular papers required.   It was never allowed to a party to examine his adversary's books or papers to see if he could find anything to make out a defence.   He must describe the paper sought for, show its materiality, and that its contents are not within his reach.

Order denying a discovery affirmed.